UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Charles McLawhorn, | ) | Civil Action No.: 4:14-cv-02745-RBH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| Ocwen Loan Servicing, LLC; and | ) | |
| Altisource Residential Corporation, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

This matter is before the Court on motions for summary judgment filed by Defendants, Ocwen Loan Servicing, LLC and Altisource Residential Corporation [ECF Nos. 59 & 60]. For the reasons stated below, the Court grants in part and denies in part Ocwen Loan Servicing, LLC and Altisource Residential Corporation's joint motion for summary judgment [ECF No. 59] and denies Altisource Residential Corporation's motion for summary judgment [ECF No. 60].[1]

## Factual Background

This case was removed to this Court from the Horry County Court of Common Pleas on July 7, 2014, on the basis of diversity jurisdiction, 28 U.S.C. § 1332. Plaintiff, Charles McLawhorn, alleged claims against Defendant Ocwen Loan Servicing, LLC ("Ocwen") and Defendant Altisource Residential Corporation ("Altisource Residential") for: 1) trespass; 2) violation of S.C. Code Ann. § 16-17-735; 3) negligence; and 4) violation of the South Carolina Unfair Trade Practices Act, S.C. Code Ann. § 39-5-10, et seq.

Plaintiff is the owner of a parcel of real property located at 3405 Burris Street, North

---

[1] Under Local Civil Rule 7.08 (D.S.C.), "hearings on motions may be ordered by the Court in its discretion. Unless so ordered, motions may be determined without a hearing." Upon review of the briefs, the Court finds that a hearing is not necessary.

Myrtle Beach, South Carolina ("McLawhorn Property"). On or about August 31, 1999, Dorothea and James Estes executed a mortgage on 3507 Burris Street, North Myrtle Beach, South Carolina ("Estes Property"). Plaintiff has never held an ownership interest or been a party to any loan agreement, guaranty, or other agreement related to the Estes Property or Estes Mortgage and Dorothea and James Estes have never held an ownership interest in the McLawhorn Property. The McLawhorn Property was not encumbered by any mortgage at any time relevant to the complaint.

Plaintiff alleges Ocwen entered into a long-term service agreement with Altisource Residential wherein Ocwen serviced mortgage loans held by Altisource Residential. Plaintiff alleges Ocwen purchased and/or serviced the Estes Mortgage. Plaintiff alleges that a title search obtained by Ocwen revealed that the Estes Mortgage was never recorded. Plaintiff further alleges Altisource Residential purchased the Estes Mortgage from Ocwen and/or performed asset management services on behalf of Ocwen with respect to the Estes Mortgage.

Following Altisource Residential's alleged purchase of the Estes Mortgage, Plaintiff contends that Defendants, on one or more occasions, forced entry into the McLawhorn Property by breaking through the front door. Plaintiff alleges Defendants and/or their agents displayed notices and/or instruments throughout the McLawhorn Property, turned off the power supply, turned off the water supply, drained hot water tanks, maliciously damaged the front door of Plaintiff's home, changed the locks, and placed a lock box on Plaintiff's front door. Plaintiff alleges Defendants broke into Plaintiff's home even though they had knowledge that the McLawhorn Property was not encumbered by any mortgage, that the McLawhorn Property was never owned by the Estes family, that the Estes Mortgage was never recorded, and that the alleged forced entry was in violation of South Carolina's laws and regulations. Plaintiff alleges an employee/agent of Altisource Residential

claimed that Ocwen hired Altisource Residential to perform work on the McLawhorn Property.

Defendants respond that a mistake in the loan servicing documents led them to believe that the Estes mortgage, which went into foreclosure, was connected with 3405 Burris Street (McLawhorn Property) instead of 3507 Burris Street (Estes Property) and that they mistakenly entered the Plaintiff's property at 3405 Burris Street to winterize it thinking that it was the Estes Property.

On July 1, 2016, Ocwen and Altisource Residential filed a joint motion for summary judgment [ECF No. 59] arguing that Defendants were entitled to summary judgment to the extent Plaintiff sought more than $200.00 in damages on his claims for trespass and negligence. Defendants also argue that they are entitled to summary judgment on Plaintiff's claims under S.C. Code Ann. § 16-17-735 (sham legal process) and the S.C. Unfair Trade Practices Act. Altisource Residential also filed a separate motion for summary judgment [ECF No. 60] arguing that Plaintiff sued the wrong defendant entity and that Altisource Residential is entitled to summary judgment as there is no genuine issue of material fact regarding its lack of involvement in this matter.

## **Summary Judgment Standard**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (2010). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record . . .; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). When no genuine issue of any material fact exists, summary judgment is appropriate. *See Shealy v.*

*Winston*, 929 F.2d 1009, 1011 (4th Cir. 1991). The facts and inferences to be drawn from the evidence must be viewed in the light most favorable to the non-moving party. *Id.* However, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

"Once the moving party has met [its] burden, the nonmoving party must come forward with some evidence beyond the mere allegations contained in the pleadings to show that there is a genuine issue for trial." *Baber v. Hospital Corp. of Am.*, 977 F.2d 872, 874-75 (4th Cir. 1992). The nonmoving party may not rely on beliefs, conjecture, unsupported speculation, or conclusory allegations to defeat a motion for summary judgment. *See Baber*, 977 F.2d at 875. Rather, the nonmoving party is required to submit evidence of specific facts by way of affidavits, depositions, interrogatories, or admissions to demonstrate the existence of a genuine and material factual issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).

**I.     Altisource Residential's Motion for Summary Judgment [ECF No. 60]**

On July 1, 2016, Altisource Residential filed a motion for summary judgment arguing that Plaintiff named the wrong entity as defendant and that Altisource Residential had no connection to any of the allegations in Plaintiff's complaint. Altisource Residential maintains that Plaintiff should have named Altisource Solutions as defendant. On October 8, 2015, Altisource Residential filed Supplemental Answers to Local Rule 26.01 interrogatories, which stated:

> Altisource Residential Corporation is improperly identified and is
> not a proper party to this litigation. Defendant separately informed
> Plaintiff that Altisource Residential Corporation is an improper
> party and has no documents or information regarding the claims set
> forth in the Complaint. In addition, Defendant informed

> Plaintiff that it believes Altisource Solutions, Inc. is the party
> Plaintiff intended to sue, and that counsel will accept service of an
> amended summons and pleading reflecting the correct
> identification.

[Supplemental Rule 26.01 Answers, ECF No. 32]. As indicated in Altisource Residential's Supplemental Answers, counsel for Altisource Residential was willing to consent to the out-of-time filing of an amended complaint reflecting Altisource Solutions as the proper party and accept service of the amended complaint on behalf of Altisource Solutions.

In support of its contention, Altisource Residential submitted the affidavit of Stephen Gray, general counsel and secretary for Altisource Residential, which stated that: 1) Altisource Residential has never acquired or had an ownership interest in either the Estes Property or the McLawhorn Property; 2) Altisource Residential is not engaged in the provision of asset management or property preservation and inspection services, and has not performed any such services with respect to the McLawhorn or Estes Property; 3) Altisource Residential did not trespass or enter upon the McLawhorn or Estes Property or contract with any party to do so; 4) Altisource Residential did not post the notice attached as Exhibit A[2] to Plaintiff's Complaint; 5) Altisource Residential has no corporate relationship with any entity that engaged in the activities alleged in Plaintiff's Complaint; 6) Altisource Residential has no knowledge regarding the activities or conduct alleged in Plaintiff's Complaint; and 7) Altisource Residential and its corporate representatives cannot provide any information relevant to Plaintiff's claims or defenses. [Altisource Residential Affidavit, ECF No. 60-5].

Altisource Residential also points to Katherine Ortwerth's deposition testimony and affidavit

---

[2]   Exhibit A to Plaintiff's Complaint indicates the notice was left by or on behalf of "Altisource," but does not specify whether it was left by Altisource Residential or Altisource Solutions.

from prior litigation, which indicates that the Estes mortgage was owned by Freddie Mac. [ECF Nos. 60-6 and 60-7]. Ocwen's Rule 30(b)(6) witness, Nicole Gostebski, testified in this case that Altisource Residential was not involved or associated with the properties involved in this case, i.e. the Estes Property or McLawhorn Property, that Freddie Mac owns the loan, and that Ocwen contracted with Altisource Solutions to perform property preservation work, not Altisource Residential. [ECF No. 60-8 at 3-7]. Additionally, documents produced by Ocwen also indicate that the Estes mortgage is owned by Freddie Mac. [ECF No. 60-12].

Plaintiff, relying on Altisource Residential's public and corporate filings, argues that a question of fact exists as to whether Altisource Residential engaged in the conduct alleged in the Complaint. Plaintiff points to the alleged close/intertwined relationship between Ocwen and Altisource Residential. Plaintiff also argues that the affidavits and deposition testimony submitted by Altisource Residential do not dispute the Complaint's allegations.

There is considerable debate about which Altisource entity entered Plaintiff's property. To be sure, there are multiple business entities that have some business relationship with one another that bear the name "Altisource," such as Altisource Residential Corporation, Altisource Asset Management Corporation, Altisource Residential, L.P., Altisource Portfolio Solutions, S.A., Altisource Residential GP, LLC, etc. The S.E.C. filing, [ECF No. 66-5, p. 21], explains through a diagram a business relationship between Ocwen, Altisource Residential Corporation, and Altisource Portfolio Solutions, S.A. That same document indicates that Altisource Residential was spun off from Altisource Solutions. The notices posted at the McLawhorn property simply indicate Altisource. *See* [ECF No. 1-1, p. 16]. Viewing the evidence in the light most favorable to the Plaintiff, there is a genuine issue of material fact as to which Altisource entity entered Plaintiff's

6

property.  Accordingly, the Court finds it prudent to deny Altisource Residential's motion for summary judgment.  Of course, Altisource Residential may raise this matter again at the directed verdict stage of the case.

**II.     Ocwen and Altisource Residential's Joint Motion for Summary Judgment [ECF No. 59]**

**A.     Trespass Damages**

Defendants argue that, as to the trespass claim, Plaintiff's claim fails as a matter of law to the extent it seeks damages in excess of $200.00, which was the cost to Plaintiff to repair/change the locks.  Specifically, Defendants, relying on *Babb v. Lee County Landfill SC, LLC*, 747 S.E.2d 468, 475 (S.C. 2013), argue Plaintiff cannot recover damages for inability to peacefully occupy the property or discomfort and annoyance because lost rental value includes the annoyance and discomfort experienced as the result of a temporary trespass or nuisance.  Defendants further argue that Plaintiff's trespass claim should by characterized as a temporary trespass claim because there are no facts to support permanent injury to the property or resulting decrease in property value.  Defendants argue that under *Babb*, Plaintiff's sole measure of damages for a temporary trespass claim is lost rental value.  Accordingly, Defendants argue Plaintiff cannot recover damages for diminution of fair market value but instead is limited to lost rental value.

Plaintiff responds that Defendants permanently trespassed when they took possession of Plaintiff's property, and permanently changed the way Plaintiff and his family used the property.  Plaintiff argues the property is worth nothing now because the value of the property lies in Plaintiff's ability to use the property and keep strangers from entering his home.  Plaintiff claims that he is no longer able to keep personal belongings in his home, store anything of value in his

home, store any food items, or secure his home to prevent future forcible entries and break-ins by the Defendants. Accordingly, Plaintiff argues that there is a question of fact as to whether his damages should be categorized as permanent or temporary.

Defendants reply that under Plaintiff's theory, every trespass that ever occurs would be permanent in nature simply due to the fact that the property owner believes the trespass could possibly occur again, regardless of the actual impact on the property. Defendants argue Plaintiff is attempting to blur the lines between personal injury damages and damages to property interests.

Damages recoverable for trespass or nuisance are strictly limited to damages to one's property interests. *Babb*, 747 S.E.2d at 474. The general rule in South Carolina is that in the case of an injury or damage of a permanent nature to real property, the proper measure of damages is the diminution of the market value by reason of that injury. *Yadkin Brick Co., Inc. v. Materials Recovery Co.*, 529 S.E.2d 764, 767 (S.C. Ct. App. 2000); *Ravan v. Greenville County*, 434 S.E.2d 296, 307 (S.C. Ct. App. 1993) ("The measure of damages for permanent injury to real property by pollution, whether by nuisance, trespass, negligence, or inverse condemnation is the diminution in the market value of the property"). On the other hand, where the damages are for a temporary harm or nonpermanent injury to real property, the measure of damages is limited to the lost rental value of the property. *Gray v. Southern Facilities, Inc.*, 183 S.E.2d 438, 443 (S.C. 1971). In *Babb*, the South Carolina Supreme Court explicitly extended the holding in *Gray* to cover trespass and nuisance claims and held that "the lost rental value of property is the sole measure of temporary trespass and nuisance damages." *Babb*, 747 S.E.2d at 476. Further, "lost rental value includes the annoyance and discomfort experienced as a result of a temporary trespass or nuisance." *Id*. at 475. *Babb* also held that "damages for permanent trespass or nuisance in South Carolina are limited to the full market

value of the property." *Id*. at 480.

Courts typically allow a property owner to testify as to the value of his own property and any damage thereto indulging the common-law presumption that a property owner is competent to testify regarding the value of his own property. *See Christopher Phelps & Assocs., LLC v. Galloway*, 492 F.3d 532, 542 (4th Cir. 2007); *Seaboard Coast Line R.R. v. Harrelson*, 202 S.E.2d 4, 5 (S.C. 1974) (stating "a landowner, who is familiar with his property and its value, is allowed to give his estimate as to the value of the land and damages thereto"). Plaintiff is competent to offer lay opinion testimony regarding the alleged damage and the value of his property following the alleged trespass. Here, Plaintiff has testified that his property cannot be restored and is worth nothing following the alleged trespass. The credibility of this position and the weight of this evidence can certainly be challenged by Defendants at the trial of this case before a jury. Defendants' arguments that Plaintiff's damages do not exceed $200.00 are persuasive, but those arguments are more properly presented to a jury and should be directed to the weight of Plaintiff's opinion concerning the extent of his damages. It is for the jury to assess the value and credibility of Plaintiff's opinion with regard to the extent of his damages. *See Harrelson*, 202 S.E.2d at 5. Likewise, it is for the jury to determine whether any alleged injury to Plaintiff's property is of a permanent nature or temporary nature. Viewing the evidence in the light most favorable to the Plaintiff, there is a genuine dispute as to the nature and extent of the damage to Plaintiff's property as a result of the alleged trespass. Defendants' motion for summary judgment is denied with respect to Plaintiff's claim for trespass.[3]

---

[3] Defendants did not move for summary judgment with respect to Plaintiff's claim for punitive damages.

B.  **Sham Legal Process**

Defendants also move for summary judgment as to Plaintiff's claim that Defendants falsely asserted authority in connection with a sham legal process in violation of S.C. Code Ann. § 16-17-735.  Section 16-17-735 provides that "[i]t is unlawful for a person falsely to assert authority of state law in connection with a sham legal process." S.C. Code Ann. § 16-17-735(B).  Sham legal process is defined as:

> the issuance, display, delivery, distribution, reliance on as lawful authority, or other use of an instrument that is not lawfully issued, whether or not the instrument is produced for inspection or actually exists, which purports to:
>
> (a) be a summons, subpoena, judgment, lien, arrest warrant, search warrant, or other order of a court of this State, a law enforcement officer, or a legislative, executive, or administrative agency established by state law;
>
> (b) assert jurisdiction or authority over or determine or adjudicate the legal or equitable status, rights, duties, powers, or privileges of a person or property; or
>
> (c) require or authorize the search, seizure, indictment, arrest, trial, or sentencing of a person or property.

S.C. Code Ann. § 16-17-735(E)(3).  Defendants argue that Plaintiff has failed to present any evidence that Defendants falsely asserted authority of state law in connection with a sham legal process.  Defendants contend that Plaintiff has not produced any instrument or document that was used by the Defendants to carry out a sham legal process.

In response, Plaintiff argues that Defendants posted foreclosure notices at his property and sent a letter that included a boilerplate statement that the "letter is from a debt collector attempting to collect a debt, and any information obtained will be used for that purpose."  Plaintiff, therefore,

10

argues that he has presented sufficient evidence of a sham legal process to survive summary judgment.

Plaintiff has offered no authority for the proposition that a foreclosure notice that is properly issued but mistakenly posted at the wrong home constitutes a false assertion of state law in connection with a sham legal process under S.C. Code Ann. § 16-17-735. Additionally, Plaintiff provides no authority, and the Court has found none in its own research, to suggest that a boilerplate statement that Ocwen is a debt collector attempting to collect a debt is a false assertion of state law. Plaintiff has failed to offer sufficient evidence that Defendants falsely asserted authority of state law in connection with any unlawfully issued instrument. Viewing the evidence in the light most favorable to the Plaintiff, Defendants are entitled to summary judgment on Plaintiff's claim of a sham legal process.

**C.     Negligence Damages**

Defendants argue they are entitled to summary judgment on Plaintiff's negligence claim to the extent he seeks damages in excess of the $200.00 actual cost to repair his home. Specifically, Defendants argue Plaintiff is foreclosed from seeking damages for diminution in property value because there is insufficient evidence of a permanent injury to the property. Second, Defendants argue that any damages claim for emotional or mental suffering is barred because Plaintiff has failed to show a physical manifestation of emotional distress.

Plaintiff responds that diminution of property value is the proper measure of damages in this case because his home was permanently damaged and is now worth nothing in that he can no longer use the property as he once did and he is unable to keep strangers from entering his home. Plaintiff states that $171,900 (alleged fair market value of the property) represents his actual damages.

Citing *Landford v. West Oakwood Cemetery Addition, Inc.*, 75 S.E.2d 865, 867 (S.C. 1953), Plaintiff also argues that if his claim that Defendants' acts were willful and wanton is proven, then mental suffering is an element of actual damages.

The basic measure of actual or compensatory damages in a negligence case "is the amount needed to compensate the plaintiff for the losses proximately caused by the defendant's wrong so that the plaintiff will be in the same position he would have been in if there had been no wrongful injury." *Graham v. Town of Latta, South Carolina*, 789 S.E.2d 71, 83 (S.C. Ct. App. 2016). In *Graham v. Town of Latta*, the South Carolina Court of Appeals approved the following jury charge in a negligence action for damage to real property:

> Where real estate has been damaged[,] the measure of damages is the difference between the value of the entire premises before and after the injury . . .If repairing the building would put it in as good a condition as before the damage[,] then the measure of damages would be the cost of repair plus any amount by which the building has been decreased due to the damages.

*Graham*, 789 S.E.2d at 83.  Accordingly, as to Plaintiff's negligence cause of action, pursuant to the jury instruction endorsed by the South Carolina Court of Appeals in *Graham*, Plaintiff can potentially recover the difference between the value of the entire premises before and after the injury and if repairing the building would restore the condition of the property, then Plaintiff could potentially recover the cost of repairs plus any amount by which the property value has been decreased due to the damages.  As stated above, Plaintiff may testify as to the value of his real property and any damage sustained to it. *Harrelson*, 202 S.E.2d at 5.  It is not this Court's function to weigh evidence at the summary judgment stage, but rather to view the evidence in the light most favorable to the non-moving party.  Applying that standard to this case, there is a genuine issue of

material fact as to the extent of the damage Plaintiff suffered to his property interests. The jury should decide whether Plaintiff's testimony regarding the nature and extent of the damage to his real property is credible. *See id*. Certainly, Defendants may cross-examine Plaintiff vigorously on the notion that his property is now worth nothing.

To the extent Plaintiff seeks damages for mental anguish or emotional distress, Defendants are entitled to summary judgment because Plaintiff has failed to offer evidence of any physical manifestation of the emotional distress. *See Babb*, 747 S.E.2d at 481 (stating "[d]amages for emotional or mental suffering are typically not recoverable, unless there is some physical manifestation of the emotional distress"). It is not entirely clear whether Plaintiff still seeks damages for mental anguish and emotional distress. At one point in the briefing, Plaintiff represents that his actual damages are $171,900.00, which is the value of the property. *See* [Plaintiff's Response in Opposition to Defendants' Motions for Summary Judgment, ECF No. 65 at 17]. Plaintiff also does not respond to or dispute Defendants' argument that recovery of damages for mental and emotional distress in a negligence action is unavailable unless there is some physical manifestation of the emotional distress. Thus, in the event Plaintiff still seeks damages for mental anguish and emotional distress, summary judgment is granted in favor of Defendants with respect to that claim.

**D.     South Carolina Unfair Trade Practices Act**

Finally, Defendants move for summary judgment as to Plaintiff's claim for violation of the South Carolina Unfair Trade Practices Act ("SCUTPA"), S.C. Code Ann. §§ 39-5-10 - 39-5-560. To recover on a claim for violation of SCUTPA, the plaintiff must establish: 1) the defendant engaged in an unfair or deceptive act in the conduct of trade or commerce; 2) the unfair or deceptive

act affected the public interest; and 3) the plaintiff suffered monetary or property loss as a result of the defendant's unfair or deceptive acts. *Wright v. Craft*, 640 S.E.2d 486, 498 (S.C. Ct. App. 2006). Defendants argue that Plaintiff has failed to establish that Defendants engaged in an unfair or deceptive trade practice or that Defendants' alleged conduct was anything more than a mistake. Defendants contend that the alleged wrongful entries onto Plaintiff's property occurred as a result of an incorrect address on the Estes Property closing documents that was mistakenly transferred to the servicing platform. Defendants also argue that Plaintiff has failed to offer any evidence that Defendants' alleged conduct affects the public interest.

Plaintiff responds that Defendants' argument that their actions were due to a mistake based on incorrect closing documents, alone, establishes a dispute as to a genuine issue of material fact. Plaintiff also argues that Defendants' alleged unfair and deceptive acts were committed on multiple occasions citing GMAC's wrongful entry into Plaintiff's home in 2011. Plaintiff also notes that Defendants in this case wrongfully entered his home on multiple occasions.

However, Plaintiff has failed to offer evidence sufficient to create a genuine issue of material fact as to whether Defendants' alleged wrongful conduct was unfair or deceptive or in any way affected the public interest. Even viewing the evidence in the light most favorable to the Plaintiff, it appears without question that Defendants' wrongful entry onto Plaintiff's property was the result of a mistake in the closing documents that carried over to the servicing platform. It is undisputed that Defendants no longer service the Estes mortgage and have fixed the error in their servicing platform. Accordingly, there is little basis to conclude that the acts are capable of repetition or otherwise affect the public interest. *See Noack Enterprises, Inc. v. Country Corner Interiors of Hilton Head Island, Inc.*, 351 S.E.2d 347, 350 (S.C. 1986) (stating SCUTPA is not available to

14

redress a private wrong where the public interest is unaffected). Also, there is insufficient evidence that Defendants engaged in any unfair or deceptive acts. Plaintiff implies that Defendants' actions were motivated by a desire to illegally acquire the McLawhorn Property, yet there is no evidence that Defendants' actions were calculated in an effort to steal or falsely obtain title or ownership to the property. For those reasons, Defendants are entitled to summary judgment with respect to Plaintiff's claim under the South Carolina Unfair Trade Practices Act.[4]

### Conclusion

For the reasons stated above, the motion for summary judgment [ECF No. 59] filed by Defendants, Altisource Residential Corporation and Ocwen Loan Servicing, LLC is **GRANTED in part and DENIED in part**. The motion for summary judgment [ECF No. 60] filed by Defendant Altisource Residential Corporation is **DENIED**.

IT IS SO ORDERED.

February 15, 2017  
Florence, South Carolina

s/ R. Bryan Harwell  
R. Bryan Harwell  
United States District Judge

---

[4] Additionally, it should be noted that this case does not fit within the parameters of a typical SCUTPA claim. Although there is no requirement that the parties be in privity of contract, *See Colleton Preparatory Academy, Inc. v. Hoover Universal, Inc.*, 666 S.E.2d 247 (S.C. 2008), Plaintiff is not a competitor, remote purchaser, or consumer of Defendants' products or services. *See Reynolds v. Ryland Group, Inc.*, 531 S.E.2d 917 (S.C. 2000). SCUTPA was intended to apply to business or consumer transactions. *See Health Promotion Specialists, LLC v. South Carolina Bd. of Dentistry*, 743 S.E.2d 808, 816 (S.C. 2013) (stating "it is clear the General Assembly intended for the SCUTPA to apply to business or consumer transactions"). Plaintiff's SCUTPA claim simply does not fit the mold.